NORTHWESTERN NATIONAL INSURANCE COMPANY *v.* WILLIAM G. WETHERALL, INC.

[No. 86, September Term, 1972.]

*Decided December 14, 1972.*

 

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and CHARLES E. MOY-

LAN, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*Patrick C. Cullen,* with whom were *Richard H. Lerch* and *Lerch & Huesman* on the brief, for appellant.

*Robert Allen Sapero,* with whom were *Sapero & Sapero* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The old saying, "Two's company, but three's a crowd" is certainly pertinent here, for our recitation of the principal question involved in this appeal is somewhat complicated by the presence of and relationships between three corporations. Therefore, we shall attempt to simplify our statement of the issues by clearly identifying the connections between the companies. Appellee, William G. Wetherall, Inc., obtained a judgment against Bethesda Welding Service, Inc. in the Circuit Court for Montgomery County. Later, Bethesda obtained a judgment against appellant, Northwestern National Insurance Company, also in the Circuit Court for Montgomery County. In execution on its judgment against Bethesda, in a proceeding in the Superior Court of Baltimore City, Wetherall directed the issuance of a writ of attachment which was laid in the hands of Northwestern as garnishee. The primary question which must be answered in this appeal is whether, by virtue of this attachment, Northwestern became responsible to appellee for the amount owed to Wetherall by Northwestern's judgment creditor, Bethesda. More particularly, the issue is whether Northwestern confessed possessing assets belonging to its judgment creditor in such a manner as to authorize, without a hearing, the entry of a judgment of condemnation absolute against it pursuant to Maryland Rule F3. We answer this question in the negative and, accordingly, reverse the judgment of the trial court.

Fortunately, the facts pertinent to this appeal are easier to present as they are not disputed by the parties

and are agreed to as stated in the appellant's brief. There, the details are recited as follows:

"On February 11, 1970, Wetherall obtained a judgment in the Circuit Court for Montgomery County in the amount of $15,834.38 against Bethesda. In an attempt to effect collection of that judgment Wetherall, on February 13, 1970, recorded that judgment in the Superior Court of Baltimore City and brought a garnishment action against Northwestern in that Court. Northwestern filed a plea of nulla bona to the attachment action.

On November 6, 1970, in the Circuit Court for Montgomery County, Bethesda filed a suit against Northwestern to obtain payment under a fire insurance policy. That suit, on February 4, 1972, resulted in a judgment for Bethesda against Northwestern in the amount of $20,-167.00.

On February 22, 1972, in the Superior Court attachment suit, Northwestern filed an 'Amended Plea of Garnishee and Confession of Assets' which recited the following:

'1. That as the result of a judgment entered against it this Garnishee confesses that it is now indebted to Bethesda Welding Service in the amount of $20,167.00.

2. This Garnishee says that other attachments have been laid in its hands and others are claiming the amount due to the said Bethesda Welding Service, Inc., on account of said Judgment.

3. That the time for the filing of an appeal from the judgment hereinabove referred to has not expired.'

That same day, February 22, 1972, Wetherall moved for and obtained a 'Judgment of Condemnation Absolute against Garnishee who has

filed Confession of Assets in Attachment.' Said judgment was in the amount of $17,851.16.

[Both a copy of the motion, which was captioned 'In The Superior Court for Baltimore City,' and the judgment of condemnation absolute were served by hand delivery to counsel for the appellant on the same February 22 date.][1]

On February 25, 1972, in the Circuit Court for Montgomery County, Northwestern was permitted to deposit in the Registry of the Court the amount of the Montgomery County judgment against Northwestern and the sum of $20,167.00 was so deposited. Notification of that action was given to counsel for Wetherall. Payments were thereafter made on April 3, 1972, from the Registry upon Petition and Order of Court as follows: (1) $7,343.16 to Glenn O. Hall, Jr. and David Kayson; (2) $4,423.80 to Robert L. Hillyard, Attorney for Earle M. Dupee, and (3) $350.16 to George A. Chadwich, Jr. On April 5, 1972 Northwestern filed with the Circuit Court for Montgomery County a 'Petition to Not Pay Further Funds from the Registry of the Court.' That Petition has not been heard nor formally acted upon by the Montgomery County Court.

In the meantime, on March 2, 1972, Northwestern filed, in the Superior Court attachment suit, a Motion to Strike the Judgment of Condemnation Absolute alleging in part:

'That said judgment was entered on the assumption that the Garnishee had "confessed assets" when in reality Garnishee's amended plea reflected that its indebtedness

---

1. Appellee in its brief states the parties have stipulated that the information here included within the brackets may be added for clarification purposes as a part of the statement of facts. We have inserted it at what appears to be an appropriate place.

to Bethesda Welding Service, Inc. was not final and, even if it were, that there were several claimants after the funds being held by the Garnishee.'

The Motion to Strike the Judgment also informed the Court that Northwestern had paid into the registry of the Circuit Court for Montgomery County the sum of $20,167.00, as set forth in detail above. On March 17, 1972 Wetherall filed an answer in opposition to Northwestern's Motion to Strike the Judgment.

The Motion to Strike the Judgment was heard before Judge Anselm Sodaro on April 5, 1972, at which time Northwestern made a formal request that the case be transferred to Montgomery County. At the conclusion of the hearing, Judge Sodaro denied Northwestern's Motion to Strike the Judgment of Condemnation Absolute, ordered Northwestern to file an Interpleader Proceeding in the Superior Court of Baltimore City within thirty days, ordered Wetherall not to execute on its judgment against Northwestern until after the determination of the rights of all interested parties in the Interpleader Proceeding and denied Northwestern's request to transfer the case to the Circuit Court for Montgomery County.

On April 10, 1972 Judge Sodaro denied Northwestern's request to reconsider his rulings of April 5, 1972, whereupon, on May 2, 1972, Northwestern noted an appeal to this Honorable Court.

On April 11, 1972 Bethesda, through counsel, made its initial entry into the case by filing a Motion to Strike the Judgment of Condemnation Absolute. That Motion is still pending."

In order to decide the various questions presented on this appeal, it is necessary to examine generally the law regulating attachments and specifically the application

of that law to the facts here. An attachment by way of garnishment issued after judgment is a mode of execution and its function is approximately the same as that of a writ of *fieri facias*. As attachment proceedings are in derogation of the common law, their existence is dependent upon special provisions authorizing them. *Killen v. American Casualty,* 231 Md. 105, 189 A. 2d 103 (1963). Authority for courts in this State to entertain attachments after judgment has long been established in our laws. The origin of this authority is found in the Acts of 1715, Ch. 40, § 7. *W. Hodge and R. McLean, The Law of Attachment in Maryland,* § 251 (1895). But, to effectuate such an attachment there must be compliance with the regulating provisions. *See* Maryland Code (1957, 1968 Repl. Vol.), Art. 9, § 17; Rules 623 and F1-5. An attachment on a judgment is a tool by which a judgment creditor can reach the assets of a judgment debtor in the hands of a third party, the garnishee. And, when properly laid in the hands of the garnishee, such an attachment creates an inchoate lien that is binding on goods, monies and credits of the judgment debtor which the garnishee then has in his possession, *as well as all those which come into his hands down to the trial and judgment in the garnishment action.*[2] *Messall v. Suburban Trust,* 244 Md. 502, 224 A. 2d 419 (1966). This inchoate lien becomes consummate with the entry of a judgment of condemnation absolute. Under the established law of this State, a garnishment proceeding is, in essence, an action by the defendant (judgment debtor) against the garnishee for the use of the plaintiff (judgment creditor). *Bendix Radio Corp. v. Hoy,* 207 Md. 225, 229, 114 A. 2d 45 (1955). This proceeding generally brings to a

---

2. This statement is not true as it pertains to wages. Maryland Code (1957, 1968 Repl. Vol., 1972 Cum. Supp.), Art. 9, § 31 provides that there can be no attachment of wages not actually due on the date of the attachment and there is a further provision for a stated amount exemption for wages due. Additionally, funds in the hands of a governmental officer or agency are not generally subject to attachment. Mayor and City Council of Rockville v. Randolph, 267 Md. 56, 296 A. 2d 574 (1972); Baltimore v. Root, 8 Md. 95 (1855).

test whether the garnishee has in his hands funds, property or credits for which the debtor would himself have a right to sue. *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 610, 261 A. 2d 475 (1970).

Keeping this general background in mind, we now consider the specifics as they relate to the conceded facts of this case and the legal contentions of the appellant. Preliminarily, we point out that, in an execution on a judgment held by a judgment creditor against a judgment debtor, monies owed under a separate judgment by the garnishee to the judgment debtor against whose credits the attachment is directed, are specifically made attachable by the provisions of the Code, Art. 9, § 17.[3] Additionally, we note that Rule G47 a, relating to attachments on original process, which provides that "[a] writ of attachment by way of garnishment may be served upon a person having property or credits" is specifically made applicable by Rule F1 to attachments on judgments and there can be no doubt that monies owed by the garnishee on a judgment are subject to attachment as "credits" within the meaning of Rule G47 a. *See Isabelle v. LeBlanc*, 68 N. H. 409, 39 A. 436-37 (1896). Likewise, it is equally free from doubt that the attachment is not made ineffective because the time for filing an appeal from the judgment establishing the debt, in this case the one due by Northwestern to Bethesda, had not run; and, therefore, the judgment was not completely final at the time the attachment was laid in the hands of the garnishee. This is so because in Maryland all assets coming into the garnishee's hands down to the entry of judgment in the garnishment suit are bound by the attachment. *Messall v. Suburban Trust, supra.* Thus, even

---

**3.** The origin of what is now codified as Code (1957, 1968 Repl. Vol.), Art. 9, § 17 is found in Laws of Maryland 1831, Ch. 321. That law was enacted as a supplement to the Acts of 1715, Ch. 40, section 7 of which expressly authorized attachments on a judgment. (*See also* Acts of 1834, Ch. 189.) Even though the codifiers of the several Maryland Codes have consistently placed this section under headings which do not give any true indication of its applicability to attachments on a judgment, the legislative history of the Act clearly establishes its utility in such a proceeding.

if we assume appellant is correct when it suggests that an attachment cannot affect a judgment that has not become completely final, here, the judgment· eventually did become completely final in all respects so as to create a credit due Bethesda by the garnishee. Further, we point out that appellant's "amended plea of garnishee and confession of assets" must be construed against it in all matters left uncertain by its answer. *Matthews v. Dares*, 20 Md. 248 (1863). In that answer, Northwestern confessed it had in its hands credits in the amount of $20,167.00 due Bethesda subject only to the rights of prior attaching creditors and other claimants. It is bound by that statement.

We now come to the principal argument advanced by the appellant as to why the judgment of condemnation absolute should be vacated. Northwestern recognizes that as garnishee of Bethesda it had a right, if not a duty, to respond and confess the possession of any assets it had belonging to that debtor. But, it contends that Rule F3 authorizes the entry of a judgment of condemnation absolute without notice and an opportunity to be heard *only* when the confession of assets is unconditional. We agree. That Rule reads:

> "Upon the filing of a confession of assets by the garnishee, the court may enter a judgment of condemnation absolute for the assets confessed, provided, however, that no claimant files his initial pleading within thirty (30) days after the return day following the service of the writ."

The purpose of allowing such a procedure is to prevent the need for a hearing when it is not disputed by the garnishee that he possesses assets which as far as he is concerned can immediately be condemned. To conditionally confess assets is to not confess them at all for the purposes of this rule. And, a garnishee is then entitled to a hearing as to his contention that a part or all of the assets he has are not subject to condemnation

in favor of the executing judgment creditor. Northwestern reasons, and we agree, that even though it acknowledged the $20,167.00 indebtedness to its judgment debtor, its confession was not unconditional as it specifically stated that "other attachments have been laid in its hands and others are claiming the amount due." When attachments on more than one judgment are laid in the hands of a garnishee they acquire priority based on the order in which the writs are served on the garnishee. *Deibert v. State,* 150 Md. 687, 691, 133 A. 847 (1926) ; *Ohio Brass Co. v. Clark,* 86 Md. 344, 348, 37 A. 899 (1897). We hold, therefore, that Northwestern, as garnishee, should be given the opportunity of which it has until now been deprived, to show that it cannot pay over to the appellee the credits it has of the judgment debtor because there are others that have a prior or superior claim to all or a portion of these funds. If Northwestern fails at this task, then will be the appropriate time to enter a judgment of condemnation absolute. To conclude otherwise may result in the garnishee, through no fault of his own, being obligated not only to pay the amount of the judgment in the attachment proceeding but also subject him to a further responsibility to pay those establishing a prior or superior right to the fund. Accordingly, we believe the trial court should not have granted the motion for judgment of condemnation absolute without a hearing and abused its discretion when it failed to strike out that judgment upon the filing of a timely request to do so. (Rule 625.) We, therefore, reverse the order of the trial court which refused to strike the judgment of condemnation absolute, vacate that judgment and remand the case for further proceedings.

This holding is not dispositive of the entire appeal as Northwestern further contends that it, as a judgment debtor, is not subject to attachment or garnishment under process issued from a court other than that in which the judgment in favor of Bethesda against it was rendered. And, since, as we have indicated, we are remanding the case to the Superior Court of Baltimore City for

further proceedings, we are required to rule on this question. The Code (1957, 1968 Repl. Vol.), Art. 9, § 17, which we earlier referred to, furnishes a simple answer to this issue. There it is provided that:

"Any plaintiff in an attachment may have the same laid upon debts due the defendant upon judgment or decrees rendered or passed by any of the courts of law or equity in this State, and *may have judgment of condemnation thereof as upon any other debts due said defendant;* but an execution may, on application of any party to the court rendering such judgment or decree, be issued for enforcing the payment thereof, notwithstanding the attachment; provided, that money payable on such judgment or decree be, in the said writ of execution, required to be brought into the said court, to be by such court preserved or deposited, or invested in stocks, to abide the event of the proceedings in such attachment." (Emphasis added.) [4]

Since no restriction exists limiting attachment of "any other debts" to the place where the debt was created, none exists, as claimed by Northwestern, limiting attachment on a judgment debt to the place (court) where that judgment was rendered.

We comment upon one last issue mentioned by the appellant. The contention is made that the trial court abused its discretion in refusing Northwestern's request to have the attachment case removed to the Circuit Court for Montgomery County. Clearly the request was correctly denied as at the time the request was made the only matter still pending before the court was appellant's motion to strike the judgment of condemnation absolute.

---

4. The payment of funds into the Registry of the Circuit Court for Montgomery County by Northwestern was not done following an execution on the judgment held by Bethesda against Northwestern and therefore was not authorized by this statute.

There is no authority for removing a case in that posture.[5]

> *Order of the trial court in which it refused to strike the judgment of condemnation a b s o l u t e reversed, judgment of condemnation absolute vacated, and case remanded to the Superior Court of Baltimore City for further proceedings.*
> *Costs to be paid by appellee.*

---

5. There was no earlier attempt to remove this case from the Superior Court of Baltimore City under Maryland Rule 542 and we express no opinion as to whether a removal of a garnishment proceeding, if made before final judgment is rendered, is authorized or mandated by that rule.