STEED MORTGAGE COMPANY, Garnishee *v.*
MARGARET C. ARTHUR

[No. 78, September Term, 1977.]

*Decided October 18, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*Bruce P. Sherman,* with whom were *Dacy & Sherman, P.A.* on the brief, for appellant.

*Bryan Renehan,* with whom were *Brodsky & Greenblatt* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This appeal is concerned with the procedural mechanics of attachment on judgment. As it developed, a monkey wrench was thrown into the machinery,[1] and a malfunction, requiring reversal, resulted.

The taproot of this litigation is a divorce decree *a vinculo matrimonii* severing the marriage between Margaret C. Arthur and Brian Arthur. The decree, passed by the Circuit Court for Montgomery County on March 24, 1975, contained a provision for the payment of alimony in the sum of five hundred fifty dollars ($550)[2] per month by Brian Arthur to Margaret C. Arthur, together with one hundred fifty dollars ($150) per month child support, counsel fees, and

---

1. Philander Johnson (1866-1939).
2. Alimony was reduced by the court on July 26, 1976, from $550 per month to $400 per month, effective June 1, 1976.

investigative costs. Evidently, Mr. Arthur did not pay because Mrs. Arthur, in August 1975, moved for summary judgment in which she asserted her claim for past due sums. A judgment for two thousand one hundred fifty dollars ($2,150) was entered by the court against Mr. Arthur on July 2, 1976. The stage was then set for the subsequent events leading to this matter's being before this Court.

Mrs. Arthur caused a Writ of Attachment to be issued out of the circuit court and laid in the hands of Steed Mortgage Company (Steed) as garnishee. The writ commanded the Sheriff of Montgomery County:

> "[To] attach the lands, tenements, goods, chattels, and credits of . . . Brian Arthur to the value of $2,150. dollars and 00/100 cents current money and cost of this attachment. . . . And . . . further . . . that you make known unto the person into whose hands you shall lay this attachment that he, she or they, be and appear before the Judges of the Circuit Court for Montgomery County, . . . on the 1st Monday October next, to show cause, (if any he, she or they have) why the lands, tenements, goods, chattels and credits by you attached, by virtue of this writ, in his, her or their hands, shall not be condemned and execution thereof had and made to and for the use of the said Margaret C. Arthur as of the lands, tenements, goods, chattels and credits of . . . Brian Arthur. . . ."

The sheriff's return read:

> "Attached and laid in the hands of Steed Mortgage Co., Garnishee and Garnishee, summoned with service on Michell [sic] Fry, Senior Vice Pres., this 22nd day of September, 1976."

The October return day passed without a response of any type from the garnishee, and Mrs. Arthur filed a "Motion for Judgment of Condemnation *Nisi.*" She cited as authority for

the motion, Md. Rule G54 b.[3] By certificate of service, the motion indicates that copies thereof were mailed to Steed and Mr. Arthur.

We observe that the procedure for the issuance of writs of attachment is set out in Subtitle F of the Maryland Rules. Rule F1 provides:

> "Where an attachment on a judgment shall have been issued pursuant to this Subtitle, it shall be served pursuant to Rule G47 (Service of Writ — Garnishment) and the procedure shall conform to the provisions of Section d of Rule G42 (Documents to Be Filed — Instructions to the Sheriff) and Rules G51 (Motion to Quash), G52 (Appearance of Garnishee), G56 (Interrogatories to Garnishee — Notice — Failure to Answer), G57 Dissolution of Attachment), G58 (Claimant of Property Attached), and G60 (Sale of Attached Property)."

Subtitle G is limited to Attachments on Original Process unless it, or subsections thereof, are specifically made applicable to other proceedings as is the case with Rule F1. That Rule, by its language, makes clear that portions of Subtitle G are incorporated into Subtitle F. Conspicuous by its absence, however, is any reference to Rule G54 b. That Rule pertains to Attachments on Original Process and is not applicable to Subtitle F. It seems that the provision for a judgment of condemnation *nisi* against a garnishee applies only when the attachment is issued on original process.[4] The motion of Mrs. Arthur for a judgment *nisi* was improper. In

---

**3.** Md. Rule G54 b provides:

"If neither the defendant, garnishee, nor any claimant of property attached by way of garnishment shall file his initial pleading within fifteen days after the return day following the service of the writ, the court may enter a judgment of condemnation *nisi* against the garnishee."

**4.** Attachments on Original Process may be issued under only five circumstances (Md. Rule G40): non-resident debtor, Md. Rule G40 a; a resident debtor evading service, Md. Rule G40 b; an absconding debtor, Md. Rule G40 c; fraud, Md. Rule G40 d; non-resident heir and devisee, Md. Rule G40 e, provided there is compliance with the other applicable subsections of Subtitle G.

filing such a motion, Mrs. Arthur lost sight of the fact that an attachment on a judgment serves approximately the same function as a writ of *fieri facias*. They are both forms of execution to enforce payment. *Northwestern National Ins. v. Wetherall*, 267 Md. 378, 384, 298 A. 2d 1, 5 (1972).

When, as here, a garnishee of attached property fails to file a pleading within the time prescribed by Rule F2, the plaintiff should move for a judgment by default, Md. Rule 310, against the garnishee. When the default judgment is entered, the plaintiff should proceed by way of inquisition, Md. Rule 648, and "prove the amount of assets of the defendant in the hands of the garnishee subject to attachment; thereupon, judgment of condemnation absolute shall be entered against the garnishee." Md. Rule F2.

Steed did not challenge the "Motion for Judgment of Condemnation *Nisi*" on the basis of its being inapplicable to an attachment on judgment, but elected to file two motions, 1) one raising preliminary objection, Md. Rule 323 on jurisdictional and constitutional grounds, and 2) a motion to quash the writ of attachment, bottomed on the same foundation.[5]

The motion raising preliminary objection was heard on oral argument in the circuit court. The hearing judge denied the motion, and in the same order entered Judgement of Condemnation Absolute against Steed, as garnishee for the amount of Mrs. Arthur's judgment against Mr. Arthur, one hundred seventy four dollars ($174) in costs and interest accounting from July 2, 1976.

The procedure followed in this case, commencing with the "Motion for Judgment of Condemnation *Nisi*" and ending with the entry of Judgment Of Condemnation Absolute, was at odds with the Maryland Rules. The Judgment of Condemnation Absolute is a nullity inasmuch as the judgment creditor, Mrs. Arthur, has not as yet proven, on inquisition, the amount of assets of the judgment debtor, subject to attachment, in the hands of the garnishee.

---

5. The record before us indicates that there never was a ruling on the Motion to Quash.

The Judgment of Condemnation Absolute must be reversed for failure to follow faithfully the prescribed procedures mandated in Subtitles F and G of the Maryland Rules. "Procedure," Mr. Justice Frankfurter wrote in *Cook v. Cook*, 342 U. S. 126, 133, 72 S. Ct. 157, 162, 96 L. Ed. 146, 152 (1951) (dissenting opinion), is not "just folderol or noxious moss." Rather, as the Justice earlier observed in *McNabb v. United States*, 318 U. S. 322, 347, 63 S. Ct. 608, 616, 87 L. Ed. 819, 827-28 (1943), "The history of liberty has largely been the history of observance of procedural safeguards." To the same effect, *see* Mr. Justice Brandeis's comment in *Burdeau v. McDowell*, 256 U. S. 465, 476-77, 41 S. Ct. 574, 576-77, 65 L. Ed. 1048, 1051 (1921) (dissenting opinion).

Inasmuch as the ultimate question of the liability, if any, of Steed may be adjudicated in a proper proceeding in accordance with Rule F2, we deem it advisable to consider the other two issues posed by Steed. It asks:

> Was the service of process on a senior vice-president, without the return of a *non est* as to a resident agent, president, secretary, or treasurer compliance with Rule 106, and is it jurisdictional in nature?

> Did the writ of attachment contain sufficient information to put the garnishee on notice of what was expected of it, and does such a writ divest the trial court of jurisdiction?

We shall treat both questions as one because of their interrelationship.

Steed argues that service of a writ of attachment which does not contain the name of the garnishee fails to give the trial court jurisdiction over the garnishee. The argument is based upon the premise that failure to name the garnishee renders the process so defective as to constitute a lack of due process of law under the Fourteenth Amendment of the Constitution of the United States and under Article 23 of the Maryland Declaration of Rights. Hand-in-glove with that contention, Steed asserts that service of process was

ineffective because it was made on a senior vice-president of the corporation without a return of *non est* on a resident agent, president, secretary, or treasurer.

The authority of the courts to entertain attachments after judgment is one of the earliest principles of Maryland law. The origin of the authority in this State is found in the Acts of 1715, ch. 40, § 7. *See Northwestern Nat'l Ins. Co. v. Wetherall*, 267 Md. at 385, n. 3, 298 A. 2d at 6, n. 3 (1972). Judge Digges, writing for the Court in *Northwestern* said:

> "An attachment on a judgment is a tool by which a judgment creditor can reach the assets of a judgment debtor in the hands of a third party, the garnishee. And, when properly laid in the hands of the garnishee, such an attachment creates an inchoate lien that is binding on goods, monies and credits of the judgment debtor which the garnishee then has in his possession, *as well as all those which come into his hands down to the trial and judgment in the garnishment action.*" (Emphasis in original.) (Footnote omitted.) 267 Md. at 384, 298 A. 2d at 5.

Attachments on judgment are governed by Maryland Rules 622, 623, Subtitle F, and those portions of Subtitle G that are incorporated into Subtitle F by reference. IV *Poe's Pleading & Practice* § 689 (H. Sachs 6th ed. 1975).

Article 23 of the Declaration of Rights, Constitution of Maryland, declares, "That no man ought to be . . . deprived of his . . . property, but . . . by the Law of the land." The elements of the "Law of the land," equated with "due process of law," are notice and an opportunity to be heard. *J. Whitson Rogers, Inc. v. Hanley*, 21 Md. App. 383, 391, 319 A. 2d 833, 838 (1974). The combined role of Maryland Rules 103 (Process-Issuance-Return) and 106 (Service of Process-Corporation is essentially to provide methods which tend to insure the ultimate reception by the corporation of actual notice that an action has been filed against it. *Id.; Heller & Co. v. Kocher*, 262 Md. 471, 478-80, 278 A. 2d 301, 305-06 (1971).

The proper mode of giving notice of an attachment on a judgment is provided under Rule G47 b, *see* Rule F1, which states that, "A writ of attachment by way of garnishment shall comply substantially with section e [f] [6] of Rule 103 . . . ." Rule 103 f provides that:

"The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names and addresses of the parties, shall state the name and address of the plaintiff's attorney, if any, and the time within which the defendant must make his defense, and shall notify the defendant that in case of his failure to do so judgment by default or decree *pro confesso* may be rendered against him for the relief demanded by the plaintiff. If service is not to be made upon a defendant personally, the summons shall also contain the name and address of the person upon whom it is to be served."

Since the writ in this case failed to name Steed Mortgage Company, it does not strictly conform to Maryland Rule 103 f.

Moreover, service of the writ, seemingly, further strayed from compliance with the Rules in that it was not effected in strict accordance with Rule 106 b. That Rule is concerned specifically with service of process on corporations. It provides that, "Process may be served upon a resident agent or upon the president, secretary or treasurer thereof," but after an unsuccessful attempt is made to serve process upon the resident agent or one of the officers enumerated in Rule 106 b 1, "process may be served upon the manager, any director, *vice-president*, assistant secretary or assistant treasurer thereof." Rule 106 b 2. (Emphasis supplied.)

From the record, it is apparent that the "Line" filed with the clerk requesting the issuance of the writ of attachment

---

**6.** The reference to section "e" of Rule 103 is obviously in error. The correct section is section "f." The editor recognized the error and inserted the proper section in brackets behind the incorrect reference to section "e."

on judgment clearly designated the name and address of the resident agent of the garnishee. The writ was actually served upon the vice-president, Mitchell Fry, six days after its issuance. What, if any, attempt was made by the sheriff to serve the resident agent or one of the specified officers, Rule 106 b 1, we are not told. Confronted with that situation, we may not infer that the service of process was either imperfect or invalid. *Parker v. Berryman,* 174 Md. 356, 359, 198 A. 708, 709 (1938).

While Steed denied any attempted service upon the resident agent, president, secretary, or treasurer, mere denial is insufficient to defeat the return of the sheriff. *Sheehy v. Sheehy,* 250 Md. 181, 185, 242 A. 2d 153, 155 (1968); *Parker v. Berryman, supra; Wilmer v. Picka,* 118 Md. 543, 549, 85 A. 778, 780 (1912). The official return of the sheriff is *prima facie* evidence of valid service. *J. Whitson Rogers, Inc. v. Hanley, supra.* The burden of demonstrating that the service was invalid is borne by him who challenges it to establish through "clear and satisfactory evidence that he was not duly summoned." *J. Whitson Rogers, Inc. v. Hanley,* 21 Md. App. at 393, 319 A. 2d at 839 (1974); *Harvey v. Slacum,* 181 Md. 206, 210, 29 A. 2d 276, 278 (1942); *Weisman v. Davitz,* 174 Md. 447, 451, 199 A. 476, 478 (1938); *Parker v. Berryman, supra.* Steed confined itself, in the circuit court, to a denial of proper service which, as we have seen, was insufficient to overcome the sheriff's return. No evidence was offered by Steed to support its denial. Thus, its attempted impeachment of the service of process upon it must fall short of that end because of the absolute failure to meet the *onus probandi.*

Lastly, Steed avers that the writ did not contain sufficient notice to the garnishee of what was expected of it.

Mr. Sachs, in his, the sixth edition of *Poe's Pleading and Practice* (1975), points out in Volume IV § 693 why the garnishee must be afforded both notice and the opportunity to appear and show cause against the attachment that was laid in the garnishee's hands. Sachs states:

> "With the garnishee . . . the suit is a new one, and it would be manifestly unjust to enter up a judgment

of condemnation against him without first giving him notice of the action and an opportunity to appear and show cause against it. Hence, the writ of attachment must always contain a clause of *scire facias* requiring the sheriff to make known to the garnishee the issuing of the process, and summoning him to appear and answer the action. If this notice be omitted, the proceedings will be *fatally* defective." (Footnotes omitted.)

Although the writ in the case now before us did not specifically name Steed as the garnishee, it contained the requisite *scire facias* clause. The writ, in pertinent part, read:

"And we further command you, that you make known unto the person into whose hands you shall lay this attachment that he, she or they, be and appear before the Judges of the Circuit Court for Montgomery County, to be held at the Court House in said county, on the 1st Monday October next, to show cause . . . why the lands, tenements, goods, chattels and credits by you attached, by virtue of this writ . . . shall not be condemned and execution thereof had and made to and for the use of the said Margaret C. Arthur as of the lands, tenements, goods, chattels and credits of . . . Brian Arthur. . . ."

We think it manifest that the textual language of the writ, as set out above, placed Steed on notice that it was expected to appear in the circuit court on the designated date to show cause why the property of Brian Arthur, held by Steed, should not be taken from them and turned over to Mrs. Arthur. At the very minimum, Steed was put on notice to make some inquiry as to what was expected of it.

"Fight[ing] till the last gasp," [7] Steed takes point-blank aim at the form of the writ of attachment used in this case. Comparing the instant writ with that utilized by the Anne

---

7. From William Shakespeare, 1564-1616, *King Henry the VI,* part I, scene ii, line 27.

Arundel County Circuit Court, as well as with that suggested by Messrs. Sykes and Tabor in West's Maryland Law Encyclopedia (M.L.E.) Forms § 1613, Steed concludes that the Montgomery County writ is patently defective to such degree as to vitiate the attachment issued in the present matter. We agree that the form used by Montgomery County leaves something to be desired, but our agreement with Steed terminates there.

Neither the Anne Arundel County Circuit Court form nor that suggested in M.L.E. has been carved by fire on tablets of stone. While both forms have merit, neither has been prescribed by the Court of Appeals as *the* form to be used.[8] All that is presently required is that the writ contain a *scire facias* clause, giving the garnishee notice and opportunity to be heard. *See J. Whitson Rogers, Inc. v. Hanley, supra.*

In our view, the writ under attack furnished proper notice to the garnishee, and Steed's endeavor to escape from the predicament in which it has placed itself must miscarry.

Penultimately, Steed claims that what it perceives as a defect in service of process deprived the circuit court of jurisdiction. Such a claim overlooks what the Court said in *Heller & Co. v. Kocher,* 262 Md. at 479, 278 A. 2d at 305 (1971) that:

"When, . . . a corporation has actual notice, *in fact,* of the pendency of the action, due process of law is obviously afforded and unless the defect in service is *jurisdictional,* the corporation cannot effectively complain that it has not been afforded due process."

Quoted in *J. Whitson Rogers, Inc. v. Hanley,* 21 Md. App. at 392-93, 319 A. 2d at 839 (1974). Neither *Heller* nor *Hanley,* however, defines which defects create jurisdictional road blocks. Steed makes the bald assertion that failure to comply with Rule 106 is a jurisdictional defect, relying upon a single

---

8. Messrs. Sykes and Tabor, in M.L.E. Forms § 1613, make no such claim. They merely state that they believe that their suggested form is in substantial compliance with the Maryland Rules of Procedure.

sentence in *J. Whitson Rogers, Inc. v. Hanley,* 21 Md. App. at 393, 319 A. 2d at 839 (1974). The sentence upon which Steed relies was quoted in *Hanley* from *Sheehy v. Sheehy,* 250 Md. at 184, 242 A. 2d at 155, that, "If the defendant was not properly served the court below had no jurisdiction and the decree issued was invalid and without significance." Steed's reliance upon the quotation from *Sheehy* is akin to placing the cart before the horse. Before *Sheehy* applies, there must be a determination that service of process was so improper as to deny the trial court jurisdiction over the defendant. Absent such a holding, *Sheehy* is inapposite.

At the expense of repetition, we again observe that Rule 106 provides in pertinent part:

> "b. *Upon Whom Made.*
>
> Service of process upon a corporation may be made as follows:
>
> 1. Resident Agent or President, Secretary or Treasurer.
>
> Process may be served upon a resident agent or upon the president, secretary or treasurer thereof.
> (Art. 23, § 92 (a).)
>
> 2. Manager, Director, Vice-President, Assistant Secretary or Assistant Treasurer.
>
> If a corporation (1) has not a resident agent, or (2) has one or more resident agents, and an unsuccessful attempt has been made to serve process upon each of such agents, process may be served upon the manager, any director, vice-president, assistant secretary or assistant treasurer thereof."

As we see it, the rule establishes a preferential order of service. It does not suggest that service upon those enumerated in sub-section b 2 instead of b 1 divests the court of jurisdiction. Reason and common sense indicate that the preferential order that the Court of Appeals has adopted is no more than procedural. The objective of the Rule is to assure that the corporation receives notice. Indeed,

if none of the persons specified in sub-sections b 1 or b 2 is served, the rule permits service upon "any other person expressly or impliedly authorized to accept such service." Rule 106 b 3.

The Rule authorizes service upon those persons enumerated in sub-section b 2 when the attempt to serve a resident agent is unsuccessful. Sub-section b 3 may be utilized only when service cannot be effected on those named in sub-sections b 1 and b 2.

It is encumbent upon a defendant or a garnishee to show to the satisfaction of the court that the process server made no attempt to serve those specified in a higher category before serving a person in a lower category. In any event, the service upon one in a secondary category without an attempt to serve a priority class is procedural rather than jurisdictional.

Steed makes one last try at eluding the grasp of the service by alleging that the way in which it was done falls "below the Plimsoll line of 'due process.' " [9] We, however, do not see it in the same light. Any fair reading of the writ of attachment that was served on Steed leads to the conclusion that the garnishee was furnished sufficient notice of the effect of the writ and an opportunity to be heard thereon. Thus, the demands of the Due Process Clause of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights were satisfied.

> *Judgment reversed.*
>
> *Case remanded for further proceedings.*
>
> *Costs to be divided equally between the parties.*

**9.** A phrase used by Mr. Justice Frankfurter, concurring, in Fikes v. Alabama, 352 U. S. 191, 199, 77 S. Ct. 281, 285, 1 L.Ed.2d 246, 252 (1957).