Edwena R. HEGNA, Steven Hegna, Craig Hegna, Lynn Marie Hegna Moore, Paul Hegna, Plaintiffs–Appellants,

v.

ISLAMIC REPUBLIC OF IRAN and the Iranian Ministry of Information and Security, Defendants–Appellees,

United States of America, Intervenor–Appellee.

Docket No. 04–1230–CV.

United States Court of Appeals, Second Circuit.

Argued: Feb. 14, 2005.

Decided: March 8, 2005.

29. It was only a few months before that Michael witnessed Stephen confess to her murder.

Ralph P. Dupont, Dupont and Radlauer, L.L.P. (Barbara J. Radlauer, Dupont and Radlauer, L.L.P., Stamford, CT, Raymond A. Connell, McMahon & Connell, P.C., New York, NY, of counsel), Stamford, CT, for Plaintiffs–Appellants.

Andrew D. O'Toole, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, Meredith E. Kotler, Assistant United States Attorney, of counsel), New York, NY, for Intervenor–Appellee.

Before: NEWMAN, SACK, and SOTOMAYOR, Circuit Judges.

## BACKGROUND

PER CURIAM.

This appeal represents the plaintiffs' fourth attempt before as many Circuit courts to enforce in part their $375 million judgment against the government of Iran for its role in the death of Charles Hegna, an American diplomat murdered by members of Hezbollah, an organization with links to the government of Iran, during a 1984 airplane hijacking. The Fourth, Fifth, and Seventh Circuits have rejected similar appeals by the Hegna family within the past year. *See Hegna v. Islamic Republic of Iran,* 376 F.3d 226 (4th Cir.2004); *Hegna v. Islamic Republic of Iran,* 376 F.3d 485 (5th Cir.2004); *Hegna v. Islamic Republic of Iran,* 380 F.3d 1000 (7th Cir. 2004). We now do the same.

The Plaintiffs filed an action in April 2000 in the United States District Court for the District of Columbia pursuant to a provision of the 1996 Antiterrorism and Effective Death Penalty Act that amended the Foreign Sovereign Immunities Act to revoke the sovereign immunity of nations that sponsor terrorism. *See* 28 U.S.C. § 1605(a)(7) (noting that a foreign state is not immune from the jurisdiction of U.S. courts in any action seeking money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources ... for such an act" engaged in by an agent or official of that state acting within the scope of his or her agency or employment). The government of Iran never appeared to defend this action. After the Hegnas established their claim to relief, *see* 28 U.S.C. § 1608(e), they were awarded a default judgment in January 2002 comprising $42 million in compensatory damages against the government of Iran and its Ministry of Information and Security and $333 million in punitive damages against the Ministry.

Seeking to enforce their judgment, the Hegnas registered it with the United States District Court for the Southern District of New York and sought to obtain an order attaching the former New York residence of the Consul General of Iran. They also pursued simultaneous orders of attachment against former Iranian properties now in the custody of the U.S. government in Washington, D.C., Bethesda, Maryland, Lubbock, Texas, Houston, Texas, Chicago, Illinois, and San Francisco, California. In addition, the Hegnas filed a claim under the Victims of Trafficking and Violence Protection Act ("VTVPA"), as amended by the Terrorism Risk Insurance

Act ("TRIA"), which authorizes the U.S. government to make payments to judgment-creditors of Iran and Cuba out of funds belonging to those nations but held by the United States. *See* VTVPA, Pub.L. No. 106–386, § 2002, 114 Stat. 1464, 1541–43 (2000); TRIA, Pub.L. No. 107–297, § 201, 116 Stat. 2322, 2337–40 (2002).

Two aspects of those statutes are noteworthy for purposes of this appeal. First, because Congress understood that the pool of funds from which payments would be made would not suffice to cover in their entirety claims by potential beneficiaries of the VTVPA as amended by the TRIA, the TRIA authorizes pro rata payments to judgment-creditors based on the size of their compensatory damage awards relative to the size of the overall pool of available funds. *See* TRIA § 201(c)(4) (amending VTVPA § 2002(d)(1)). Second, in exchange for receiving payments from the United States, Congress required that judgment-creditors give up some of their rights to enforce their judgments through other means. In particular, the TRIA requires that the creditors relinquish their rights to collect punitive damages, as well as all rights to execute against or attach property "that is at issue in claims against the United States before an international tribunal." *See* TRIA § 201(c)(4) (amending VTVPA § 2002(d)(5)(A), (B)).

In July and November of 2003, the Hegnas received two payments from the United States government, totaling more than $8 million, pursuant to their claims under the VTVPA and the TRIA. On January 14, 2004, the district court denied the Hegnas' effort to attach the former residence of the Iranian consul general in New York, dismissing their complaint with prejudice. *See Hegna v. Islamic Republic of Iran,* 299 F.Supp.2d 229, 231 (S.D.N.Y.2004). The court concluded that the Hegnas were precluded from levying upon the property because they had relinquished that right as a condition of accepting payment under the VTVPA and the TRIA, and because the property is currently "at issue" before an international tribunal, namely the Iran–United States Claims Tribunal set up in the aftermath of the Iranian hostage crisis. *Id.* at 230–31.

## DISCUSSION

The Hegnas challenge the conclusions of the district court, arguing principally that the United States, as an intervenor in this action, has failed to prove not only that the Hegnas have received the full payment to which they are entitled under the VTVPA and the TRIA, but also that the Iranian consul general's former New York residence is "at issue" before a competent international tribunal.

We reject those arguments for the reasons stated by the district court. *See id.* We note that this decision is in accord with the opinions of three other Circuits that have considered this matter. *See Hegna,* 376 F.3d at 235–36 (Fourth Circuit); *Hegna,* 376 F.3d at 496 (Fifth Circuit); *Hegna,* 380 F.3d at 1009 (Seventh Circuit).

We need not and do not reach the government's alternative argument that the former consul general's residence is not a "blocked asset" as that term is defined in the TRIA, and therefore should not be subject to attachment in any case under the terms of that statute. We note, however, that this issue may yet present itself at some future date should the action before the Iran–United States Claims Tribunal be resolved, such that the status of the Iranian government's former U.S. property is no longer pending before an international tribunal. Because the Hegnas may wish to reassert their claims at such a future time, and because our decision does not preclude such an attempt, we hereby modify the district court's decision such

that the case is dismissed *without* prejudice to refiling at such a future date. Our decision in this regard does not in any way imply a view on our part as to whether such a claim may then be maintained or as to the likely merit of any such claim.

We have considered the plaintiffs' other arguments and we find them to be without merit.

## CONCLUSION

The judgment of the district court is affirmed as modified to dismiss the complaint *without* prejudice to refiling.