COMPTROLLER OF THE TREASURY *v.* MAYOR AND
CITY COUNCIL OF BALTIMORE

[No. 753, September Term, 1980.]

*Decided March 9, 1981.*

The cause was argued before MORTON, WILNER and WEANT, JJ.

*Paul S. Sugar, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Thomas J. Mace* on the brief, for appellant.

*Harry L. Chase, Assistant City Solicitor for Baltimore*

*City,* with whom was *Benjamin L. Brown, City Solicitor for Baltimore City,* for appellee Mayor and City Council of Baltimore; *David B. Allen* for appellee Shirley B. Allen.

MORTON, J., delivered the opinion of the Court.

This is an appeal by the State of Maryland acting through the Comptroller of the Treasury, Retail Sales Tax Division, from an order entered in the Superior Court of Baltimore City, dated May 7, 1980, directing the quashing of a writ of attachment served on the City of Baltimore at the direction of the Comptroller of the Treasury to garnish the wages owed to its employee, Shirley B. Allen, a teacher in the public school system of Baltimore City.

In this appeal by the Comptroller the following question is presented:

> "Did the Court below err in quashing the writ of attachment served on the City by the State when it allowed the City to assert the defense of sovereign immunity in an action brought *against it* by the State?"

It appears that on July 25, 1972, the Comptroller assessed Shirley B. Allen $6,542.57 for unpaid retail sales taxes, including interest and penalty. Pursuant to the provisions of Md. Ann. Code, art. 81, § 342 (b), the Comptroller on November 2, 1972, filed a lien against any property of Ms. Allen. Under date of October 18, 1979, the Comptroller had the clerk of the Superior Court of Baltimore City issue a writ of attachment and requested the sheriff to lay the writ of attachment "in the hands of the Mayor and City Council of Baltimore — Central Payroll Division, Garnishee, to bind the salary or wages owing the Defendant [Shirley B. Allen]." Baltimore City filed a motion to quash the writ of attachment on the ground that it "is a municipal government and is not subject to Attachment procedures." On May 7, 1980, the court quashed the writ of attachment. This appeal followed.

Md. Ann. Code Art. 81, § 208, authorizes the Comptroller of the Treasury to institute attachment proceedings against delinquent taxpayers and there is no contention here by either Ms. Allen or the City of Baltimore that the retail sales tax assessment against Ms. Allen is not valid.

They contend, however, that because Baltimore City is a municipal corporation or government, it is absolutely immune from attachment procedures, including those brought by the State of Maryland. They point out that the "genesis of the rule in this State prohibiting the attachment of the salary of a municipal employee is found in *Baltimore v. Root,* 8 Md. 95 (1855)." In that case Root, a private citizen, laid an attachment in the hands of an official of Baltimore City seeking to garnish the wages of a Baltimore City police officer in order to satisfy a judgment obtained by Root against the officer. In reversing an order of the lower court approving the attachment, the Court of Appeals observed, at 100:

> "It has been repeatedly held, that money due by the government to its officers or agents for services rendered by them as such, whilst it remains in the hands of the government or in the keeping of its disbursing agents, is not liable to be attached or seized by the creditors of those having such claims upon the government. This is certainly true in regard to those who hold appointments directly from State authority. The opposite theory would be calculated to produce serious interruptions in the course of public business, and hinder and delay, if not entirely prevent, in some instances, the accomplishment of very important measures, depending for their successful termination upon the prompt and regular supply of the funds on which the officers or agents have to rely."

The Court went on to reason, at 102:

> "As municipal corporations are parts of the State government exercising delegated political powers, for public purposes, the rule which prevents an

attachment from being levied upon a claim of one State officer on funds in the hands of another, applicable to its payment, must apply with equal force to a case like the present. If an argument against the right to attach, based upon inconvenience, can have an influence in any case, it surely should do so where the officers of a large city are, necessarily, very numerous."

*Root*, of course, involved the action of a private citizen and certainly lends no support, in our opinion, to the proposition advanced by the appellees that Baltimore City is immune from an attachment action brought by the State of Maryland. The appellees argue, alternatively, that "Governmental immunity may be waived only by an act of the General Assembly, and the Comptroller's attempt to attach the wages of a municipal employee for sales taxes, if approved, would amount to a violation of the separation of powers doctrine . . . ."

It is true that the Court of Appeals has said that as a general proposition any waiver of immunity must emanate from the legislature (*Bradshaw v. Prince George's County,* 284 Md. 294, 300 (1979)), but it is equally true that the Court of Appeals in *Rockville v. Randolph,* 267 Md. 56 (1972), had no trouble in approving an order of the trial court which directed the City of Rockville to make weekly deductions from the salary of a city employee to be applied toward the support of the employee's illegitimate child. The Court of Appeals said, at 62:

"Here we have not a creditor in pursuit of the collection of a private debt, but a superior apparatus of government soliciting an order of court directing an inferior apparatus to hand over the part of money due an employee which is not a debt but an obligation to his dependent, absent the payment of which the superior apparatus must pay out of public funds a like amount to the employee's dependent. We have said on a number of occasions that cities and counties are but local divisions of the

state. Every municipal corporation remains a creature of the state and it is subject to absolute control by the Legislature. . . . We see little difference, if indeed there is any difference, between the situation before us and a direction by the state to a municipality to withhold a predetermined amount of the salary of each of its employees and hand it over to the Comptroller to be credited against the income tax liability of the individual." (Citations omitted.)

We think this same approach should be followed in resolving the issue here since we see little or no difference in the State government directing a municipality to withhold periodic payments from an employee's salary to be credited upon the employee's income tax liability and the State government, through the aegis of a court order, directing a municipality to deduct payments from the salary of one of its employees to meet that employee's obligation to pay retail sales taxes owing to the State government. We simply find no merit in the suggestion by Baltimore City that because the collection provisions of the income tax statute and those in the sales tax statute are not identical, this somehow makes the analogy untenable.

We think the proposition advanced in 18 McQuillan, *Municipal Corporations,* 209, § 53.24 (3rd Ed. Rev. 1977), with respect to municipalities' general tort immunity, is sound and is completely supportive of the right of the Comptroller to proceed against Baltimore City in this action:

"[A] municipality derives its general tort immunity from the state because it is deemed to act as the state's arm or agent when performing governmental functions. It has been stated, then, that it would be illogical to allow a municipality sued by the state to assert its immunity against the very source of that immunity. Consequently, it has been held that a municipality may not assert the defense of sovereign immunity in an action based upon its

negligent performance of a governmental function brought by the state itself." (Footnotes omitted.)

It seems to us that the interruptions, hindrances and delays in the course of the public business, visualized by the *Root* Court over a century ago, should not prevent the Comptroller of the State of Maryland, in this computerized, electronics age, from utilizing the facilities of Baltimore City to collect taxes conceded to be owed by one of the city's employees.

In view of our holding, we fail to see any merit or relevancy in the final argument of Baltimore City that "[a] State agency loses its sovereign immunity when it files suit in a court of that State."

*Judgment reversed; costs to be paid by Mayor and City Council of Baltimore.*