MAYOR AND CITY COUNCIL OF BALTIMORE and
SHIRLEY B. ALLEN *v.* COMPTROLLER
OF THE TREASURY

[No. 30, September Term, 1981.]

*Decided January 4, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Harry L. Chase, Assistant City Solicitor,* with whom was *Benjamin L. Brown, City Solicitor,* on the brief, for appellant Mayor and City Council of Baltimore and by *David B. Allen* for appellant Shirley B. Allen.

*Paul S. Sugar, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Thomas J. Mace* on the brief, for appellee.

Rodowsky, J., delivered the opinion of the Court. Cole, J., dissents.

At issue here is whether the Comptroller of the Treasury (Comptroller) may attach the wages of an employee of the Mayor and City Council of Baltimore (the City) in order to collect on a recorded lien for delinquent retail sales taxes, interest and penalty. The Comptroller's position is that the claim of the State, as the superior sovereign, prevails over any immunity which the City might otherwise enjoy from being made a garnishee. In opposition the City contends, *inter alia,* that the General Assembly did not intend that the procedures available to the Comptroller for the collection of retail sales tax obligations include garnishments served on public officials. We agree with the City's position for the reasons which follow.

Shirley B. Allen is a City schoolteacher. On July 25, 1972 the Comptroller assessed her for unpaid retail sales tax, interest and penalty in the amount of $6,542.57. Acting pursuant to Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 342 (b),[1] the Comptroller recorded among the judgment records

---

1. Art. 81, § 342 in relevant part provides:

(a) *Personal debt; limitation of actions.* — The tax imposed by this [Retail Sales Tax Act] subtitle and all increases, interests and penalties thereon shall become, from the time due and payable, a personal debt of the person liable to pay the same to the State of Maryland. An action may be brought at any time within four (4) years from the time the tax shall be due and payable by the Comptroller in name of the State to recover the amount of any taxes, penalties and interest due under the provisions of this subtitle . . . .

(b) *Lien.* — The tax, and all increases, interests and penalties thereon shall be a lien upon all the property, real and/or personal, of any person liable to pay the same to the State from and after the time when notice has been given that such tax has become due and payable as provided herein. Notice of such lien shall be filed by the Comptroller with the clerk of the circuit court of the county in which said property is located, or if located in Baltimore City, with the clerk of the Superior Court of Baltimore City. Each clerk of court shall accurately and promptly record and index all such notices of lien filed with him by the Comptroller and shall enter such lien in the judgment docket of the court, stating the name of the delinquent taxpayer, the amount of the lien and the date thereof. The lien provided for in this section shall have the full force and effect of a lien of judgment. Unless another date is specified by law, the lien arising at the date of nonpayment as in this section specified and provided for, shall continue with the same

of Baltimore City a lien in that amount indexed in her name. On October 18, 1979 the Comptroller directed the Clerk of the Superior Court of Baltimore City to issue a wage attachment on the lien and directed the Sheriff of Baltimore City to lay the writ of attachment in the hands of the Central Payroll Division of the City, as garnishee of Shirley B. Allen. The trial court granted the City's motion to quash and the Court of Special Appeals reversed. *Comptroller of the Treasury v. Mayor and City Council of Baltimore,* 48 Md. App. 199, 425 A.2d 1389 (1981). We granted the City's petition for certiorari.

"[T]he weight of authority favors the view that municipal corporations and their officers having money or property in their hands to which other persons are entitled are not liable to the creditors of such persons on attachment or garnishment process unless made so by statute or charter." 17 E. McQuillan, *Municipal Corporations* § 49.86, at 386 (3d ed. 1968). *Accord,* Annot., *Garnishment of Salaries, Wages or Commissions Not Expressly Exempted by Statute,* Part II, "Salaries or wages of public officials or employees," 56 A.L.R. 601, 602-624 (1928); 6 Am. Jur. 2d, Attachment and Garnishment, § 78 (1963). The Comptroller advances a two-step argument why the general rule does not apply here. First, he says that the writ of attachment is available for the collection of all taxes imposed under Article 81 by virtue of § 208 thereof. Secondly, he says that when the State attaches the wages of an employee of a political subdivision, the political subdivision may not assert immunity against its creator.

Section 208 is part of the subtitle, "Suits for Collections of Taxes," which consists of §§ 206 through 211 of Art. 81. This subtitle was established by the Tax Revision Act of 1929 (Ch. 226). Present § 206 (a) provides:

> Any tax may be collected from the person liable under this article to pay the same by action of

force and effect as a judgment lien. Any such lien on personal property shall not be effective as against an innocent purchaser for value unless the personal property has been levied upon by an officer of a court.

assumpsit instituted at any time after said tax shall become due and payable, within the period of limitations. . . .

Section 207 deals with the name in which "[a]ny such suit for the collection of State taxes may be instituted . . . ." Then, § 208, dealing with attachment, provides:

*Any such suit,* whether the defendant be a resident or a nonresident of this State *may be begun* by writ of attachment against the lands, goods, chattels or credits of the defendant; and such attachment, except as in this article otherwise provided, shall be governed in all respects by the rules of law and procedure applicable to attachments for liquidated damages against nonresidents; and no attachment bond shall be required of the plaintiff. [Emphasis added.]

The attachment laid on the City in this case cannot be predicated on § 208. The suit which "may be begun" by writ of attachment under § 208 is one which includes a declaration in assumpsit for taxes as contemplated by § 206 (a). Section 208 describes attachment on original process. This is clear because attachment on original process is the type of attachment by which an action is begun and because § 208 incorporates the procedure applicable to attachments for liquidated damages against nonresidents. These are elements which are of significance in attachment on original process. *See* Md. Code (1974, 1980 Repl. Vol.), §§ 3-302 through 3-305 of the Courts and Judicial Proceedings Article and Md. Rules G40-G61. The attachment requested by the Comptroller in this case, and issued by the Clerk, was an attachment on judgment. It is sometimes referred to as an attachment "at the foot of judgment" in order to distinguish it from attachment on original process.

As Judge Digges, writing for this Court, explained in *Northwestern National Insurance Co. v. William G. Wetherall, Inc.,* 267 Md. 378, 384, 298 A.2d 1, 5 (1972): "An attachment by way of garnishment issued after judgment is a mode of execution and its function is approximately the

same as that of a writ of *fieri facias.* As attachment proceedings are in derogation of the common law, their existence is dependent upon special provisions authorizing them." Today attachment on judgment is authorized by Md. Rule 623, which reads:

> A plaintiff having a judgment may, instead of any other execution, issue an attachment against property of the defendant in the plaintiff's own hands, or in the hands of any other person, which attachment shall contain the clause of *scire facias* required in an attachment against a nonresident or absconding debtor as provided by statute or these Rules.

Inasmuch as Art. 81, § 342 (b) provides for the recording and indexing of notice of a sales tax lien "in the judgment docket of the court," as was done here, and provides that the lien "shall have the full force and effect of a lien of judgment," we interpret "judgment" as used in Rule 623 to include a recorded sales tax lien. The questions then remain whether the writ of attachment under Rule 623 may be laid in the hands of a political subdivision garnishee, and if so, by whom.

Rule 623 reads that the writ may be laid in the hands "of any other person . . . ." "Person" is defined in Md. Rule 5 q to mean "any natural person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."[2] The meanings ascribed to the defined terms in Rule 5 apply "except insofar as expressly otherwise provided, or as may result from necessary implication." If the definition of Rule 5 q is fully and literally read into "any other person" in Rule 623, then attachments on judgment may be served upon political sub-

---

2. The source line for Rule 5 q indicates that it is derived from the definition of "person" in the Declaratory Judgment Act, now § 3-401 of the Courts and Judicial Proceedings Article. There "person" includes "the State, any county, municipal corporation, or other political subdivisions of the State, or any of their units, or an individual . . . or any partnership, firm, association, public or private corporation, or any other entity." This may be compared with Md. Code (1957, 1981 Repl. Vol.), Art. 1, Title, "Rules of Interpretation," § 15 under which the "word person shall include corporation, unless such a construction would be unreasonable."

divisions not only when the State holds the judgment, but also when any private creditor holds a judgment against a debtor who is entitled to a credit held by a political subdivision. But such a reading would overturn the long established Maryland law under which attachments do not lie against counties and cities — at least at the instance of a private creditor.

The root case in this State is *Baltimore v. Root,* 8 Md. 95 (1855) in which a private creditor issued an attachment on judgment to the City, to reach the salary of a police officer. The creditor in that case recognized that attachments could not be laid on the State but contended the rule did not apply to municipal corporations. In rejecting that argument this Court placed heavy reliance on *Bulkley v. Eckert,* 3 Pa. 368 (1846) where the attachment for the wages of a schoolteacher was laid in the hands of the treasurer of the township school board. We quoted therefrom the following rationale *(Baltimore v. Root, supra,* at 101):

> "Great public inconvenience would ensue if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given. If a precedent of this kind were set there seems no reason why the State or county treasurer, or other fiscal officers of the commonwealth, or of municipal bodies, may not be subjected to the levying of attachments, which has never been attempted nor supposed to come within the attachment law. We do not, therefore, think this is such a debt as is contemplated by that law."

Because "municipal corporations are parts of the State government exercising delegated political powers, for public purposes," *Root* held that the rule which prevents an attach-

ment from being levied upon the State "must apply with equal force to a case like the present." *Id.* at 102.

The creditor in *Root* next contended that although the original Maryland statute authorizing attachment by way of garnishment issued after judgment, Ch. 40 of the Acts of 1715,[3] as amended by Ch. 56 of the Acts of 1795, did not by its terms extend to corporations, the Acts of 1825, Ch. 114, § 2 allowed attachments on judgments against goods, chattels and credits of the judgment debtor "in the hands of any other person or persons whatever corporate or sole," and thereby included municipal corporations. In rejecting that contention this Court said that the "argument from inconvenience, which, exclusive of the Act [of 1825] prohibits or denies the right of attachment, we think will sanction the construction that the Legislature did not design to include municipal corporations." *Id.* at 103. It was noted that although the Pennsylvania statute at issue in *Bulkley v. Eckert, supra,* was "certainly very general," that court had nevertheless decided that state, county or municipal fiscal officers "are not subject to the levying of attachments, and have never been supposed to come within the attachment law." This Court then reasoned:

> [I]f . . . the necessity for guarding the public against the evils resulting from a different theory, induced the construction given in that case, there is just as much propriety, from necessity, in the present instance, for holding, that although the Act of 1825 gives authority to levy an attachment in the hands of any person or persons, *corporate or sole,* nevertheless officers of a municipal corporation are not subject to the provisions of that Act. The principle seems to be well settled, that without this Act such officers would not be liable to process of this sort. That necessity which established this principle, and which likewise justified the Pennsylvania courts in so restricting the general

---

**3.** *See* Northwestern Nat'l Ins. Co. v. Wetherall, *supra,* 267 Md. at 384-85 and n.3, 298 A.2d at 5-6 and n.3.

> language of their statutes as not to include even the treasurer of the board of school directors for a township, will not permit us so to construe our law as to sustain the plaintiff's claim. Reason and necessity we think fully justify the construction that the Act does not include but excepts cases of this sort. [*Id.* at 104. (Emphasis in original).]

Attachment cases in this Court have been consistent in their adherence to *Root. See Wilson v. Ridgely,* 46 Md. 235, 248 (1877) ("Though the provisions of the attachment laws of this State are very broad, we cannot believe that they were ever intended to authorize attachments to be laid upon funds in the hands of State or municipal officers as such, and thereby impose upon them and the public service such annoyances, inconveniences and interruptions as are described [in *Bulkley v. Eckert*]."); *Keyser v. Rice,* 47 Md. 203, 213 (1877) ("From considerations of public convenience, the Courts have long since decided, that attachments would not lie against the salaries of public or municipal officers . . . ."); *Dale v. Brumbly,* 98 Md. 468, 56 A. 807 (1904) (*Root*-like analysis applied to attachment laid in hands of clerk of circuit court); *Lawrence v. Commercial Banking Corp.,* 165 Md. 559, 561-62, 169 A. 69, 70 (1933) ("It is well settled in this state that wages or salaries of public officers or agents are not attachable. This results from the immunity of the government from suit as well as from principles of public policy."); *Hughes v. Svboda,* 168 Md. 440, 443, 178 A. 108, 109 (1935) ("[S]ince the laws of the State were not intended to give authority to lay attachments in the hands of public officials or state institutions *(Wilson v. Ridgely, supra),* it necessarily follows that their operation is not suspended by a confession of assets."); *Ridge Lumber Co. v. Overmont Development,* 34 Md. App. 14, 366 A.2d 125 (1976) (affirming the quashing of an attachment laid in hands of Baltimore County, Maryland). *Accord,* Karwacki, *Attachment of Wages in Maryland,* 16 Md. L. Rev. 227, 231 (1956); Rhynhart, *Attachments in the People's Court of Baltimore City,* 14 Md. L. Rev. 235, 263 (1954); I. Gomborov, *Law of Attachment in Maryland* 24-25 (1926); 2 J. Poe, *Pleading*

*and Practice* § 699 (5th ed. 1925); W. Hodge and R. McLane, *Law of Attachment in Maryland* § 140 (1895).

At this stage of our analysis we conclude that necessary implication requires that Rule 623's use of the term "person" was not intended to alter prior Maryland law and does not result in statutory authorization for private creditors holding judgments to lay attachments on municipal corporations.

However, in none of our decisions to date, involving public garnishees, has the State been the attaching creditor. The reason for the result reached in cases of private creditors has not always been consistently expressed. In *Baltimore v. Root, Wilson v. Ridgely* and *Hughes v. Svboda, all supra,* the analysis was that public official garnishees were not included in the generally phrased statute which authorized attachment. On the other hand *Lawrence v. Commercial Banking Corp., supra,* directly placed the rule on immunity and public policy grounds. The present case brings into focus the possible differences in the analysis underlying the result of our prior decisions. Here the Comptroller presumes that the writ has reached wages due to Shirley B. Allen and views the issue as one of competing policies, *i.e.,* whether the interest of the public official garnishee at the municipal level of government must yield to the interest of the State in collecting taxes due to it. On the other hand, if the writ of attachment in Maryland does not run to public official garnishees, then the wages of Shirley B. Allen have not been reached, because of a limitation on the scope of the process. In the latter event, the issue of competing policies is not reached.

Two other of our decisions touch upon this problem. *Phillips v. Baltimore City,* 110 Md. 431, 72 A. 902 (1909) was the case of a homeowner in Baltimore County, near the City line, who sued the City in the Circuit Court for Baltimore County, alleging injuries to the person caused by a nuisance created by the City's storm water system. In opposition to the City's asserted venue privilege, the plaintiff sought application of a statute which provided that every corpora-

tion may be sued where it regularly transacts business or exercises its franchises. Relying on *Root,* this Court pointed to the inconvenience involved in permitting a municipal corporation, in a transitory action, "to be dragged from one end of the State to the other at great cost and inconvenience to the public which constitutes the municipality" in order to defend. We construed the general venue statute as not to embrace municipal corporations. *Id.* at 440, 72 A. at 906. But, in that context, we said that "[t]o permit these great public duties to be hindered or delayed in their performance, in order that individuals or private corporations might more conveniently collect their private debts, would be to pervert the great object of the creation of municipal corporations." *Id.*

The other decision, *Rockville v. Randolph,* 267 Md. 56, 296 A.2d 574 (1972), involved a paternity proceeding. Faced with a delinquency in support payments, the trial court entered an order directing the City of Rockville to deduct $15 per week from the salary of its employee, the father, and pay the same to a court officer. This order was based upon Md. Code (1957, 1966 Repl. Vol., 1971 Cum. Supp.), Art. 16, § 66H which had been amended by Ch. 154 of the Acts of 1970 to provide that the court in such proceedings "may order a lien upon the earnings of the defendant . . . and the employer is required to deduct that amount as soon as notified by the Court." The City of Rockville moved to quash on the basis of *Root.* We sustained the payroll deduction order. Child support is not a debt within the meaning of § 38 of Art. III of the Constitution of Maryland. We said that the order objected to was not an attachment within the meaning of *Root* and that there was no garnishment or garnishee. It was said that in that case "we have not a creditor in pursuit of the collection of a private debt, but a superior apparatus of government soliciting an order of court directing an inferior apparatus to hand over the part of money due an employee which is not a debt but an obligation to his dependent, absent the payment of which the superior apparatus must pay out of public funds a like amount to the employee's dependent." *Id.* at 62, 296 A.2d at 576. We held that the Legislature by enacting Ch. 154, did not intend "to insulate the already large

and evergrowing battalions of laborers in the public's vineyards against the power of the courts to conserve the public's funds by enforcing the obligation of fathers of illegitimates to support their get." *Id.* at 63, 296 A.2d at 577. The opinion concluded by noting that "[i]t must not be supposed that we have attenuated *Root* or the cases which followed it. Today's holding must not be thought to go any further than the facts presented." *Id.* at 63-64, 296 A.2d at 577. The Comptroller lays great stress on *Rockville,* but that opinion expressly recognizes the continued vitality of the *Root* line of cases.

While we read *Root* and its progeny to espouse the proposition that attachments simply are not authorized to be served on public officials, the absence of precedent dealing with the State as creditor leads us to review other streams of law which converge in the issue here. We shall look for additional guidance to the law relating to wage garnishments and to prior and present remedies for the collection by the State of special taxes.

(i)

The Comptroller's attachment here is a wage garnishment. Historically, wage garnishments have been treated differently than other attachments. Maryland's first wage exemption statute, enacted by Ch. 340 of the Acts of 1852, was amended by the Acts of 1854, Ch. 23 to provide: "That no attachment of the wages or hire of a laborer or other employee, in the hands of the employers, *whether private individuals or bodies corporate,* shall affect any salary or wages of the debtor, which are not actually due at the date of the attachment." (Emphasis added.) [4] The italicized language continued in effect until July 1, 1975 when the Commercial Law Article was adopted by the Acts of 1975, Ch. 49. The most recent form of this language was Md. Code (1957, 1968 Repl. Vol., 1974 Cum. Supp.), Art. 9, § 31 (a) which read in relevant part as follows:

---

4. The record in *Root, supra,* reflects that the attachment there was served on August 6, 1852, so that the Act of 1854 was not involved.

> No attachment of the wages or hire of any laborer or employee, in the hands of the employer, *whether private individuals or bodies incorporate,* shall affect any salary or wages of the debtor which are not actually due at the date of the attachment, and the sum of one hundred twenty dollars multiplied by the number of weeks in which such wages due were earned or seventy-five percent (75%) of such wages of hire, whichever is greater, due to any laborer or employee by any employer *or corporation* shall always be exempt from attachment by any process whatever . . . .[5] [Emphasis added.]

In the clause italicized above "private" must be taken as modifying both "individuals" and "bodies incorporate," in order to avoid an absurd construction. The pre-Commercial Law Article form of the statute could not have meant that a wage garnishment was not to name as garnishee the financial officer of a municipal corporation, because he was not a private individual, but that it might permissibly name the municipal corporation itself as garnishee, because that entity was a body corporate.[6] Thus, from 1854 to July 1, 1975 the statute dealing with wage garnishment and exemption was apparently expressly limited to private, as opposed to public, garnishees. It was so limited when Rule 623 first became effective on January 1, 1957 as part of the adoption of the Twelfth Report of the Standing Committee on Rules of Practice and Procedure.

Former Art. 9, § 31 (a) became Md. Code (1975), § 15-602 of the Commercial Law Article.[7] The Revisor's Note to

---

5. The change from "corporate" to "incorporate" was apparently due to inadvertence; in the 1970 reenactment of the statute "incorporate" was designated as existing law. *Compare* Code (1957, 1968 Repl. Vol.), Art. 9, § 31 *with* Ch. 444 of the Acts of 1970.

6. Even if "private" directly modified only "individuals," the unqualified reference to "bodies incorporate" would, under the holding in *Root,* be read to exclude municipal corporations.

7. Md. Code (1975), § 15-602 of the Commercial Law Article in pertinent part provided:

> (a) *Wages to be due at date of attachment. —* An attachment of an employee's wages in the hands of his employer does not affect those wages not actually due at the date of the attachment.

§ 15-602 states that "[t]he only changes are in style."
It therefore appears that the General Assembly did not
intend any substantive change from prior law in this
enactment.

Section 15-602 was amended by Ch. 452 of the Acts of 1978
(effective July 1, 1979) as part of the change to continuing
wage garnishments from an attachment which reached only
those wages due at the time the writ was served. Ch. 452
changed the operation and effect of the post-judgment
attachments for wages, but the new enactment contains no
indication that the class of potential garnishees was
intended to be enlarged beyond traditional private debtors of
the judgment debtor.

(ii)

When our analysis is shifted to approach the problem from
the tax laws, we find that prior to 1929 there was express
statutory authorization for a result much like that sought by
the Comptroller in this case. But that authorization no
longer exists. Md. Code (1924), Art. 81, § 86 made the
following provision:

> Whenever the State shall have a judgment or
> decree against a debtor or his securities, and money
> may be ordered to be levied by the county commis-
> sioners of any county, or the mayor and city council
> of Baltimore, for the benefit of such debtor, or any
> one of his sureties, *the state's attorney* for the
> county *may order an attachment to be issued* by the
> clerk of the court where such judgment or decree
> was passed against the goods, chattels, rights and

---

(b) *Exemption from attachment.* — The following amounts of
wages shall be exempt from attachment:
. . .

(c) *Exception.* — Subsection (b) of this section does not apply to
an attachment of wages for income tax due to the State.

(d) *Waiver of exemption void.* — A waiver of exemption of wages
from attachment is void.
The term "employer" is not a defined term in subtitle 6, "Attachment of
Wages," of Title 15 of the Commercial Law Article.

credits, lands and tenements of such debtor and his sureties, *which may be laid in the hands of the county commissioners,* or their clerk, or any collector of said county, or any or all of them, in the discretion of the state's attorney; *and the proceedings on such attachments shall in all respects be the same as in other attachments on judgments or decrees.* [Emphasis added.]

This section had its genesis in the Acts of 1845, Ch. 196, § 2.[8] There are no decisions of this Court which construe the above-quoted statute or its predecessors. While the reference to "securities" and "sureties" of the debtor, coupled with the recognition of the possibility of a levy by local government for the benefit of the debtor, suggest that this statute may have been principally aimed at collectors of taxes, the statute nevertheless seems to have been considered as one of general application. Mr. Bagby, in compiling the 1924 Code of Public General Laws, placed the statute under a subtitle headed, "Execution Against Debtors to the State." W. Hodge and R. McLane, *Law of Attachment in Maryland* § 259 (1895) reproduced the text of the statute without comment and as if it set forth a rule of general application.

Code (1924), Art. 81, § 86 was repealed as part of the tax revision effected by Ch. 226 of the Acts of 1929. That enactment was proposed to the General Assembly in the December 1, 1928 Report of The Maryland Tax Revision Commission, which was chaired by Arthur W. Machen. In its December 1928 Report the Commission, at p. xiv, explained its philosophy on provisions relating to "Collection by Suit or Attachment."

The present law contains numerous, partially redundant and partially inconsistent, special provisions for collection of taxes by suit against the person or corporation liable therefor; and even where no such special provision is found, a suit at common

8. The Act of 1845, with amendments which are not particularly pertinent here, traces through Code (1860), Art. 81, § 85; the Acts of 1874, Ch. 483, § 75; Code (1888), Art. 81, § 76 and Code (1904), Art. 81, § 79.

law may be maintained. We have provided expressly that all taxes may be collected by action of assumpsit [now Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 206 (a)], *and have outlined any special proceedings in such action, but have omitted as unnecessary any provisions for suits to collect particular kinds of taxes.*

As we are abolishing distraint for taxes, we have inserted a provision that any suit for collection of taxes may be begun by attachment against the lands, chattels or credits of the delinquent, as if the defendant were a non-resident [now Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 208]. This provision may be used advantageously wherever it is apprehended that the defendant may make way with his property. [Emphasis added.]

Thus, while assumpsit for taxes might be begun by attachment on original process and attachment might issue on a judgment obtained, the 1929 revision of Article 81 omitted the prior, express authorization for the State to lay an attachment on a county as garnishee of the State's debtor. If the position of the Comptroller in this case is correct, whereby an attachment issued at the request of the State is said to reach credits due to a delinquent taxpayer in the hands of the public officials of a political subdivision, then much of a statute which was in effect for 84 years was surplusage.

### (iii)

After the 1929 revision, the General Assembly next returned to the subject of attachment for the collection of taxes due to the State as a consequence of the advent of income taxes. *See* Ch. 11, § 8 of the Acts of the Special Session of 1937 and Ch. 277, § 12 of the Acts of 1939.

By Code (1939), Art. 81, § 254 the income tax became "from the time it is due and payable, a personal debt, from the person or persons liable to pay the same to this State,

and . . . collectible in the same manner as other State taxes are preferred and collectible under the provisions of [Art. 81]."

Provision for a lien for income taxes was made by Ch. 635 of the Acts of 1943, which added § 257B to Art. 81 of the 1939 Code. Under § 257B (4) the Attorney General was directed, at the request of the Comptroller, to "file a civil proceeding . . . to enforce the lien . . . upon any property and rights to property, real or personal, owned by the delinquent taxpayer . . ." and the court could decree a sale. Section 257B (5) created a continuing lien on the salary and wages of the taxpayer. Notice of the lien was to be given by registered mail to the employer, who thereupon became personally liable to pay to the Comptroller all of the delinquent taxpayer's salary and wages in excess of $15 per week until the lien was satisfied. Chapter 635 of the Acts of 1943 also amended the wage garnishment statute, Code (1939), Art. 9, § 33, to provide that the salary or wages of any employee would not be exempt from attachment at the instance of the State for income taxes due. The statute creating and providing for the enforcement of income tax liens was again before the General Assembly for amendment in 1947 (Ch. 606).

At that 1947 session the Retail Sales Tax Act was adopted by Ch. 281. However, the General Assembly did not follow the then existing model of the income tax laws with respect to the lien for sales taxes. Code (1939, 1947 Cum. Supp.), Art. 81, § 278 (b) provided simply that the sales tax "shall be a lien upon the property of any person liable to pay the same to the State for a period of four (4) years from and after the time when such tax becomes due and payable as provided herein." The Retail Sales Tax Act, unlike the Income Tax Act, has never provided that the lien for unpaid sales taxes extends to wages.[9]

---

**9.** The sales tax lien provisions, set forth in n.1, may be compared to the present Income Tax Act provisions for a lien on wages now found in Code (1957, 1980 Repl. Vol.), Art. 81, § 322 (5) which provides in pertinent part as follows:

The lien of the State for income tax due . . . shall extend to and cover all salary, wages, hire, remuneration and compensation for

Under the income tax law, the one who is responsible to remit to the Comptroller wages which are subject to the lien for income taxes is generally the employer. By Ch. 281 of the Acts of 1955 the definition of "employer" was amended as follows (italics indicate new matter):

> "Employer" means any person, firm or corporation *including the Federal government, the State of Maryland and any county, municipal corporation or political sub-division or instrumentality of this State,* employing or utilizing the services of one or more individuals for hire, remuneration or compensation of any kind.

*See* Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 279 (k).

In 1961 Attorney General Thomas B. Finan, later a judge of this Court, was asked to advise the Comptroller whether a lien for income taxes could be asserted against the wages of a county schoolteacher. He opined (46 Op. Atty. Gen. 223, 223-24):

> It is true that as a general principle the courts of this State have held that funds in the hands of state or municipal officers are not subject to attachment [cit. om.]. The reasoning of these cases, however,

---

personal services of every kind, due and owing at the time such lien accrues, and which shall become due thereafter, as long as said lien is not fully satisfied and discharged. The Comptroller shall promptly give notice of such lien . . . to any employer of any delinquent taxpayer by registered mail . . . . No employer, after receiving notice of lien, . . . shall thereafter pay to an individual named in such notice . . . any salary, wages, hire, remuneration or compensation for personal services due at the time such notice is received . . . nor . . . credit on its books . . . compensation for personal services thereafter earned by or payable to such delinquent taxpayer . . . in excess of $50 plus $15 for each personal and dependent exemption per week until . . . the lien has been satisfied or released. All salary . . . as above set forth . . . until the lien is fully satisfied or released, shall be promptly paid to the Comptroller by such employer . . . . Every employer . . . who is personally served with any notice of lien, shall be personally liable to the State for any sums which he shall pay . . . to any employee named in any notice of lien . . . .

turns on the theory espoused by the courts that
although the normal attachment laws of this State
are very broad, the courts could not "believe that
they were ever intended to authorize attachments
to be laid upon funds in the hands of state or munic-
ipal officers as such, and thereby impose upon them
and the public service such annoyances,
inconveniences and interruptions as are described.
. . ." *Hughes v. Svboda, supra,* [168 Md.] at 442
[,178 A. at 109]. In our opinion, however, we feel
the Legislature has made its intention clear in re-
gard to the income tax lien for salary or wages by
defining the word "employer" to include the State
and any county, municipal corporation, political
subdivision or instrumentality of this State. In
effect, the Legislature has declared that the
desirable policy of collecting State income tax reve-
nue will override the policy of not burdening State
and municipal officials with the duty of answering
attachments or honoring liens.

(iv)

In the instant case any power of the Comptroller to reach
the taxpayer's wages from the City rests on the writ of
attachment, a process of statutory origin. Our cases have
said that the general provisions of attachment statutes were
not intended to include public officials as garnishees, and we
have long held that such attachments do not lie. It has been
seen that special statutes have been enacted which expressly
authorized the State, as creditor, to reach credits of its debtor
in the hands of public officials. There is no such special
authorization under the wage garnishment statute or under
the Retail Sales Tax Act. The historic pattern has been one
of exclusion by construction in the absence of clear statutory
inclusion. Absent any statute which clearly authorizes the
Comptroller to attach the salary of a City or county

employee for sales tax due, we hold that the writ here did not reach the wages payable by the City to Shirley B. Allen.[10]

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court for the entry of a judgment affirming the judgment of the Superior Court of Baltimore City.*
>
> *Costs to be paid by the State of Maryland, except as to the printing of the opinion of the Court of Special Appeals, which shall be paid by the appellant.*

*Cole, J., dissents.*

---

**10.** The Comptroller moved to dismiss the appeal, based on the petitioner's failure to include the opinion of the Court of Special Appeals in the record extract. That opinion was supplied by the Comptroller in his appendix. The motion to dismiss is denied, but the costs of printing the opinion are allowed to the State. Bornstein v. State Tax Comm'n, 227 Md. 331, 335, 176 A.2d 859, 860 (1962).