593 A.2d 1099

**Mary L. LOMAX**

v.

**COMPTROLLER OF THE TREASURY et al.**

**No. 93, Sept. Term, 1990.**

Court of Appeals of Maryland.

Aug. 19, 1991.

Andrew J. Groszer, Jr., Cockeysville, for petitioner.

Gerald Langbaum, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., John K. Barry, Asst. Atty. Gen., Annapolis, Harriet B. Granet, Asst. Atty. Gen., Baltimore), on brief, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, Specially Assigned), MARVIN H. SMITH, Judge of the Court of Appeals (retired, Specially Assigned), JJ.

CHASANOW, Judge.

Mary L. Lomax is a retired Maryland state school teacher who receives benefits from her state retirement pension. On August 18, 1987, the Comptroller of the Treasury, Income Tax Division (Comptroller) had a judgment and tax lien entered against Lomax for unpaid income tax for the tax years 1985–86. On March 13, 1989, in an attempt to satisfy this judgment against Lomax, the Comptroller filed with the Clerk of the Circuit Court for Baltimore County a request for writ of garnishment to be served on the Maryland State Retirement and Pension Systems (the garnishee). The writ was duly issued. The garnishee filed an answer/confession of assets and has expressly consented to the garnishment. Both the Comptroller and the garnishee were represented by the Attorney General. Lomax filed a motion to vacate the garnishment of her pension benefits, contending her state retirement system pension benefits were exempt from garnishment by either private creditors

or by the State pursuant to Maryland Code (1957, 1988 Repl.Vol.), Article 73B, § 96(c), which pertains to the Teachers' Retirement System of the State of Maryland (Retirement System), Md.Code (1957, 1988 Repl.Vol.), Art. 73B, § 81 *et seq.*, and provides in relevant part:

"The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under the provisions of this subtitle, and the money in the various funds created by this subtitle, shall not be subjected to execution, garnishment, attachment, or any other process whatsoever...."

A hearing was held in the Circuit Court for Baltimore County, and the circuit court denied Lomax's motion to vacate the garnishment and entered an order directing payment of the sum of $7,583.12 to the Comptroller.

Lomax appealed to the Court of Special Appeals, and in an unreported opinion, the intermediate appellate court held that "the State is not barred by § 96(c) from garnishing [Lomax's] retirement pension." This Court granted certiorari to consider the issues of statutory construction raised by Lomax.

In *State v. Milburn*, 9 Gill. 105 (1850), this Court quoted with approval Justice Story's statement:

"General Acts of the Legislature are meant to regulate and direct the acts and rights of citizens, and in most cases, the reasoning applicable to them applies with very different, and often contrary force, to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the Act."

*Id.* at 118.

Generally this rule is applied where the statute in question regulates or affects citizens or private corporations and

does not manifest an intention that the State be bound by it. For example, in *Glascock v. Baltimore County,* 321 Md. 118, 581 A.2d 822 (1990), we held that the Legislature did not intend the State to be bound by zoning regulations for the construction of a communication tower. This Court declared:

> "Because the General Assembly neither named the State nor manifested an intention that it be bound by the provisions of the enabling act which granted zoning authority to the City, we concluded that the City was without power to subject the State's use of the property to its zoning ordinance."

*Id.* at 121, 581 A.2d at 824.

In *Harden v. Mass Transit Adm.,* 277 Md. 399, 354 A.2d 817 (1976), the issue before the Court was whether Md.Code (1957, 1972 Repl.Vol., 1975 Cum.Supp.), Art. 48A, § 539, compelled the Mass Transit Administration (MTA) to carry basic required primary insurance coverage. Since there was no clear manifestation of the intent of the Legislature to include the State within the purview of the regulatory scheme, we held that the MTA was not obligated to conform to the provisions.

> "We conclude that there was no manifest intention demonstrated on the part of the General Assembly to include MTA within the 'no fault' insurance provisions and that if it had intended to include MTA within those provisions it would have made a specific provision to that effect."

*Harden,* 277 Md. at 413, 354 A.2d at 824.

Additionally, in *City of Baltimore v. State,* 281 Md. 217, 378 A.2d 1326 (1977), Baltimore City argued that the State must comply with local zoning ordinances when constructing a correctional institution. Once again, the statute in question neither specifically provided nor clearly implied that the State was intended to fall within its purview. This Court held that, since no clear implication could be derived from the language of the statute that the State should be bound by the local zoning ordinances, the State was not bound. *Id.* at 224, 378 A.2d at 1330.

The principle underlying this line of cases was well stated in *Nationwide v. USF & G*, 314 Md. 131, 550 A.2d 69 (1988). Judge Eldridge observed that "a statute regulating or affecting the activity of persons or corporations is ordinarily construed as not encompassing the government itself unless it expressly so provides."[1] *Id.* at 137, 550 A.2d at 72 (Citations Omitted).

An example of a statute that is construed as implicitly encompassing a government entity, although it did not expressly so provide, is the Historic Area Zoning legislation set forth in Md.Code (1957, 1988 Repl.Vol. & 1990 Cum. Supp.), Art. 66B, §§ 8.01–.15. In *City of Annapolis v. Anne Arundel Co.*, 271 Md. 265, 316 A.2d 807 (1974), we discussed the purposes of historical preservation and the necessity of uniformity of application of the statutory mandates to accomplish these purposes:

"First of all, traditional zoning is primarily directed at the *use* of land, as well as the *density* and the *location* of buildings on the land. Historic area zoning, on the other hand, is not directed at any of these factors, but *only* at the *preservation* of the *exterior* of *buildings* having *historic or architectural merit....*

Secondly, to accomplish the primary purposes of historic area zoning, it is necessary that the exterior of the building having historic or architectural value be preserved against destruction or substantial impairment by *every one*, whether a private citizen or a governmental body. In short, the historically or architecturally valuable building is just as much lost by destruction by a public body as it would be by a private owner.... The General Assembly could well conclude that, to accomplish

---

1. This general rule of statutory construction has been applied to the federal government as well. In *United States v. United Mine Workers of America*, 330 U.S. 258, 272, 67 S.Ct. 677, 686, 91 L.Ed. 884, 902 (1947), the Supreme Court stated: "There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect."

historic and architectural preservation, the jurisdiction of the Commission *should* extend *to all owners* be they private persons or governmental agencies. Otherwise, the primary purpose of the legislation would be frustrated." (Emphasis in original)

*Id.* at 291–92, 316 A.2d at 821.

The question before this Court, in the instant case, is whether the Legislature intended to preclude the State, as well as private creditors, from garnishing state teachers' retirement pension benefits. If the statute had expressly so provided, then the State would be prohibited from garnishing the retirement pension. Since the statute did not expressly provide, the intent of the General Assembly must be determined.

It has been suggested that the search for legislative intent should be an attempt to "seek to discern some general purpose, aim, or policy reflected in the statute." Sykes, *A Modest Proposal for a Change in Maryland's Statutes Quo*, 43 Md.L.Rev. 647, 653 (1984). Of course the words of the statute must be examined, and if a plain meaning can be discerned from them, then that meaning should be adopted. In circumstances like those at bar, however, where a statute is susceptible of more than one meaning, " 'the court ... may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result,. or one which is inconsistent with common sense.' " *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986)).

The apparent purpose of the General Assembly in enacting Art. 73B, § 96(c) was to protect teachers' retirement pension benefits from garnishment by private creditors. To hold that the State is also bound by this statute would limit the sovereign right of the State to collect taxes. " 'It is the policy of the law to insure the collection of all taxes, and whenever it is possible on any theory to do so the courts will construe the statutes to accomplish that result.' " 3A

N. Singer, *Sutherland Statutory Construction*, § 66.06, at 317 (4th ed., rev.1986) (quoting *Nassau County v. Lincer*, 254 A.D. 746, 4 N.Y.S.2d 77, 78 (1938), *aff'd*, 280 N.Y. 662, 20 N.E.2d 1018 (1939)). *See also Surratts Assoc. v. Prince Geo's Co.*, 286 Md. 555, 566, 408 A.2d 1323, 1329 (1979); *Casey Dev. Corp. v. Mont. County*, 212 Md. 138, 147, 129 A.2d 63, 68 (1957). The money used to pay state salaries and fund state pension benefits is derived in large part from the general funds created by the collection of income tax. We do not believe that the Legislature intended to allow Lomax to demand money the State owes her from the Retirement System, which is funded, in part, by income tax revenue, while she refuses to pay money she owes the State for income tax.

Although Lomax has, in this Court, abandoned any reliance on *City of Baltimore v. Comptroller*, 292 Md. 293, 439 A.2d 1095 (1982), we believe the distinction between that case and the instant case should be discussed. In *City of Baltimore*, the Comptroller obtained a judgment against a Baltimore City school teacher for unpaid retail sales tax and filed a writ of attachment for a wage lien against the Central Payroll Division of the city, as garnishee. This Court held that the State was barred from garnishing wages held by the city payable to the school teacher. Our primary concern in that case was not with the State's sovereign right to collect taxes; it was with the burden imposed on the city as garnishee. We stated,

> " '[T]he weight of authority favors the view that municipal corporations and their officers having money or property in their hands to which other persons are entitled are not liable to the creditors of such persons on attachment or garnishment process unless made so by statute or charter.' "

292 Md. at 296, 439 A.2d at 1096 (quoting 17 E. McQuillan, *Municipal Corporations*, § 49.86, at 386 (3d ed.1968)). In *Mass Transit v. Household Finance*, 292 Md. 313, 439 A.2d 1104 (1982), we stated that this rule is predicated not upon governmental immunity, but rather upon public policy:

"The policy of the law which prevents the laying of attachments in the hands of public officials seeks to prevent inconvenience and the disruption of public affairs. That principle operates independently of whether governmental immunity has been waived as to the garnishee." 292 Md. at 316, 439 A.2d at 1106. This policy was also explained in *Hughes v. Svboda*, 168 Md. 440, 178 A. 108 (1935), where we stated:

" 'great public inconvenience would arise if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being estopped in the routine of their business, compelled to appear in court, employ counsel and answer interrogatories, as well as take care that the proceedings are regularly carried on.' "

168 Md. at 442, 178 A. at 109 (quoting *Wilson v. Ridgely*, 46 Md. 235, 247 (1877).[2]

The differences between the instant case and *City of Baltimore*, revolve around the public policy considerations of inconvenience to the government and the disruption of its affairs. The principal difference between the two cases is that, in *City of Baltimore*, the garnishee and judgment creditor were two different governments, while in the instant case they were part of the same government. We held in *City of Baltimore* that to force the City of Baltimore to expend its resources so that another sovereign (the State) could collect its judgment would result in the injurious disruption of the city's public affairs. The city would have to bear the inconveniences outlined in *Hughes*, so that the State could reap the benefits of collecting its judgment.

In the instant case, the Retirement System and the Comptroller are both agencies under the control of the same sovereign, the State. Maryland Code (1957, 1988 Repl.Vol., 1990 Cum.Supp.), Art. 73B, § 16 provides that payment of

---

2. We note that by statute wages due from a state, county or municipal corporation are now made subject to attachment. *See* Maryland Code (1975, 1990 Repl.Vol.), Commercial Law Article, § 15–607.

all pensions, as well as all expenses for the administration and operation of the state retirement systems are obligations of the State. The inconveniences enumerated in *City of Baltimore* and *Hughes* clearly do not apply here since the Comptroller and the Retirement System work within the same governmental unit and both are even represented by the same attorney, the Attorney General. The public affairs of the State government would in no way be disrupted if these two agencies of the same government were permitted to cooperate in the garnishment of Lomax's pension benefits. *City of Baltimore* is clearly inapposite.

It is a fundamental principle of creditors' rights that creditors have a right to set-off and may apply moneys owed to debts due. See *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947): "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' " *Id.* at 239, 67 S.Ct. at 1602, 91 L.Ed. at 2027 (quoting *Gratiot v. United States*, 40 U.S. (15 Peters) 336, 370, 10 L.Ed. 759, 771 (1841)). We doubt that the Legislature intended to extinguish the State's right to accomplish through the legal process of garnishment that which it might be entitled to do by a self-help mechanism such as set-off.

We hold that Art. 73B, § 96(c), which bars creditors from garnishing Retirement System benefits, does not preclude the State from consenting to the garnishing of state teachers' retirement pension benefits in order to satisfy a judgment for unpaid state income tax.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY APPELLANT.